JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Security National Insurance Company

**(b)** County of Residence of First Listed Plaintiff: New York, New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Thomas B. Fiddler, White and Williams, 1650 Market Street, Suite 1800, Philadelphia, PA 19103

## DEFENDANTS

Westminster American Insurance Company, Varner & Van Volkenburg, PLLC, and Debra Tedeschi Varner

County of Residence of First Listed Defendant: Baltimore County, MD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [x] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1332(a)(1)

Brief description of cause:
Dragonetti Act, 42 Pa. C.S. § 8351—Wrongful procurement; wrongful continuation of civil proceedings; wrongful procurement & initiation of civ. proc

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: November 18, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Thomas B. Fiddler

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Philadelphia, Pennsylvania

***RELATED CASE IF ANY:*** Case Number: 2:20-cv-02195, 2:25-cv-06047 Judge: John R. Padova

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☑
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☑ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:________

***B. Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):________
☐ 7. Products Liability
☒ 8. All Other Diversity Cases: *(Please specify)* Wrongful use of civil proceedings

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SECURITY NATIONAL INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>WESTMINSTER AMERICAN INSURANCE COMPANY, VARNER & VAN VOLKENBURG, PLLC, and DEBRA TEDESCHI VARNER,<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Security National Insurance Company ("SNIC"), by and through its undersigned counsel, hereby brings this action and, in support thereof, alleges as follows:

## INTRODUCTION

1. This case arises from two meritless prior actions filed in this Court by Defendant Westminster American Insurance Company ("Westminster"), as part of Westminster's scheme to reduce its liability for a catastrophically injured worker, and then profit off a manufactured and clearly baseless statutory bad faith claim against another insurance company, SNIC.

2. In 2019, two workers were injured when a fire-escape balcony attached to an apartment building collapsed. Westminster insured the owner of the building, while SNIC insured a subcontractor hired to fix a leak in the bathroom ceiling of an apartment unit in the building.

3. On information and belief, Westminster engineered a scheme to avoid its full liability to one of the workers, who was paralyzed in the accident, and his wife. Westminster entered into two sham settlements with the workers and the property owner. Under the terms of

the settlements, the paralyzed worker received only partial satisfaction of his potential claim in cash from Westminster, below Westminster's own policy limit. In exchange, the property owner purported to assign a frivolous bad faith claim against SNIC to the worker at a staggering—and preposterous—valuation.

4. Westminster, along with the worker and his wife, then brought an action against SNIC, seeking more than $142 million in damages. Westminster and the other plaintiffs alleged, *inter alia*, that SNIC breached its insurance policy and acted in bad faith. But the insurance policy SNIC issued plainly did not cover the claims at issue—which Westminster knew.

5. This Court dismissed the action in its entirety. Westminster appealed and continued to advance its claims, including its statutory bad faith claims. By that point, however, this Court had held that SNIC had no coverage obligation under its policy issued to the subcontractor. SNIC, therefore, had at least a reasonable basis for denying coverage, which defeated any statutory bad faith claim asserted by Westminster and other plaintiffs, even if the Court's initial decision was vacated. Westminster knew all this, but pressed on with claims that had become independently baseless.

6. To do so, Westminster retained new counsel, Defendant Debra Tedeschi Varner of Defendant Varner & Van Volkenburg, PLLC ("Varner & Van Volkenburg," and collectively, with Westminster and Ms. Varner, "Defendants"), for the next stage of the case.

7. After an appeal, this Court again dismissed the case, finding that any further amendment would be futile, and the Third Circuit affirmed.

8. Thereafter, Defendants filed *another* meritless action against SNIC—nearly a carbon copy of the first one, still seeking more than $142 million—which was plainly barred by

*res judicata* and the statute of limitations. In the face of SNIC's fully briefed motion to dismiss and SNIC's threat to file a sanctions motion, Defendants voluntarily dismissed this second action with prejudice less than three months after they filed it. Defendants did so without receiving any payment or concession from SNIC, and on the eve of the Court's ruling on SNIC's motion to dismiss—a ruling that inevitably would have dismissed the second action with prejudice.

9. Defendants did not initiate, procure, and continue their meritless actions to achieve a fair resolution of their claims. Instead, they initiated, procured, and continued these actions to intimidate SNIC into a settlement through the threat of meritless statutory and common-law bad faith claims demanding stratospheric damages—more than $142 million, against a $1 million policy.

10. Defendants' misconduct failed to coerce a settlement out of SNIC. But Defendants caused SNIC to expend substantial attorneys' fees and costs and suffer significant reputational harm.

11. SNIC now brings this action for wrongful initiation, procurement, and continuation of civil proceedings under the Dragonetti Act, 42 Pa. C.S. §§ 8351–8354.

**PARTIES**

12. Plaintiff SNIC is a corporation incorporated under the laws of Delaware with its principal place of business in New York, New York.

13. Defendant Westminster is a corporation incorporated under the laws of Maryland with its principal place of business in Owings Mills, Maryland.

14. Defendant Varner & Van Volkenburg is a professional limited liability company with its principal place of business in Clarksburg, West Virginia. On information and belief, each of Varner & Van Volkenburg's members is a citizen of West Virginia.

15. On information and belief, Defendant Ms. Varner is an individual who is a citizen of West Virginia.

## JURISDICTION AND VENUE

16. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of different U.S. states than each Defendant: SNIC is a citizen of Delaware and New York, while Westminster is a citizen of Maryland, and, on information and belief, Varner & Van Volkenburg and Ms. Varner are citizens of West Virginia. The amount in controversy exceeds $75,000, excluding interest and costs.

17. This Court has personal jurisdiction over Defendants because this case arises from Defendants' transaction of business in Pennsylvania, 42 Pa. C.S. § 5322(a)(1), Defendants contracted to supply insurance and/or legal services in Pennsylvania, *id.* § 5322(a)(2), and Defendants caused tortious injury to SNIC in Pennsylvania, *id.* §§ 5322(a)(3), (a)(4). This Court also has personal jurisdiction over Westminster because Westminster contracted to insure persons, property, and/or risks within Pennsylvania. *Id.* § 5322(a)(6)(i).

18. Venue is proper in this District because a substantial part of the events giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### I. The Underlying Accident and the Insurance Policies.

19. On June 25, 2019, Argenis Reyes and Waldy Reyes[1] were performing work on an apartment building located at 4207 Chester Avenue, Philadelphia, Pennsylvania, and owned by 4207 Chester Ave., LLC ("Chester"). Argenis and Waldy were standing on a third-floor fire-escape balcony and discarding construction debris when the balcony collapsed. Due to this tragic accident, Waldy fractured two ribs, and Argenis was permanently paralyzed.

20. At the time, Argenis was employed by Altman Management Company, Inc. ("Altman"), the property-management company hired by Chester to maintain the building. Waldy was employed by AM Marlin Construction, LLC ("AM Marlin"), a subcontractor that had been hired by Altman to fix a leak in the bathroom ceiling of an apartment on the property.

21. Chester was the named insured under the commercial general liability coverage issued by Defendant Westminster, consisting of a primary policy with a $1 million limit and an excess policy with a $5 million limit (together, the "Westminster Policy"). The Westminster Policy thus provided $6 million in total limits.

22. Westminster is an insurance company, formed in 1869, that describes itself as "a leading insurer of commercial real estate in the Mid-Atlantic." It holds a certificate of authority in Pennsylvania and regularly conducts business in the Commonwealth. On information and belief, it has been a party to at least 10 lawsuits filed in the Eastern District of Pennsylvania since 2013.

[1] For clarity, Argenis Reyes and Waldy Reyes are identified by their first names.

23. AM Marlin was the named insured under a commercial general liability policy issued by Plaintiff SNIC, Policy NA117546702 (the "SNIC Policy"). The SNIC Policy had a policy limit of $1 million.

24. Relevant here, the SNIC Policy included the following provisions:

a. An Insuring Agreement under which SNIC agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [SNIC] will have the right and duty to defend the insured against any 'suit' seeking those damages." "Suit" was defined as "a civil proceeding in which damages . . . to which this insurance applies are alleged," including "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with [SNIC's] consent," and "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with [SNIC's] consent."

b. An endorsement (the "Additional Insured Endorsement") that included a schedule identifying Altman and Chester, and stated that organizations in the schedule were covered as additional insureds, but "only to the extent that the person or organization shown in the schedule is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for that insured."

c. Another endorsement (the "Employer's Liability Exclusion" or "ELE"), excluding from coverage "[b]odily injury" to "[a]n 'employee' . . . of 'any insured'" arising out of and in the course of employment by the insured or the performance of "duties related to the conduct of an insured's business."

25. AM Marlin has never been sued relating to the June 25, 2019 accident—let alone been adjudicated at fault for the accident—and thus has never been "held liable" for anything relating to that accident. AM Marlin did not attend the mediation described below.

**II. Initial Correspondence.**

26. On December 26, 2019, Westminster, on behalf of its insured Chester, tendered to SNIC claims against Chester by Argenis, his wife Rosalba Munoz, and Waldy. Westminster asserted that Chester was an additional insured under the SNIC Policy. No suit had been filed by Argenis, Ms. Munoz, or Waldy; Westminster asked only that SNIC "agree to undertake defense and indemnity of this case when [Argenis and Waldy] proceed with litigation."

27. On January 2, 2020, SNIC acknowledged the tender and began an investigation. On January 15, 2020, SNIC requested additional information and advised Westminster that it "ha[d] identified coverage issues which may limit or preclude coverage for the claim."

28. On April 3, 2020, Westminster's counsel forwarded to SNIC the demand package that Argenis and Ms. Munoz had sent to Chester. SNIC responded on April 29, 2020, (1) stating that the insurance claim was still under investigation and review, (2) reiterating that coverage issues had been identified, (3) highlighting that Westminster had declined to provide SNIC with the information it had requested on January 15, 2020, (4) pointing out that SNIC's insured, AM Marlin, had not been identified as a party to a lawsuit related to this matter, and (5) indicating that formal coverage position letters would be issued to AM Marlin and Westminster in due course.

29. Argenis and Westminster understood AM Marlin's lack of fault—and, by extension, SNIC's lack of liability. In an April 23, 2020 email to Westminster, Argenis's own

counsel questioned AM Marlin's liability and whether coverage was available to Chester under the SNIC Policy. He wrote:

> I understand that there is no indemnity contract between the LLC [Chester] and AM Marlin. . . .
>
> Therefore, the basis of your claim for indemnity from the Marlin carrier [SNIC] is the endorsement entitled "Blanket Additional Insureds." Section A of that endorsement provides that the person or organization shown in the schedule is an insured, "but only to the extent that the person or organization shown on the schedule is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for that insured."
>
> Since the Complaint has not been filed, there may be some ambiguity about whether this coverage is triggered. Let me be clear. At this time, I am seeking to settle this claim against 4207 Chester Avenue LLC only. I am not taking a position as to whether AM Marlin is directly liable in negligence to my client.

30. On May 6, 2020, after a reasonable investigation, SNIC formally denied coverage to Chester. SNIC acknowledged that Chester was listed in the Additional Insured Endorsement, but explained that any coverage was limited to the extent Chester was held liable for AM Marlin's acts or omissions arising out of AM Marlin's ongoing operations performed for Chester. The claims against Chester stemmed from its own conduct and obligations relative to property maintenance, for which AM Marlin had no responsibility. Therefore, SNIC took the position that coverage was not triggered under the SNIC Policy.

**III. The Sham Settlements.**

31. On May 8, 2020—two days after SNIC's formal denial—Westminster asked SNIC to reconsider and invited it to a pre-suit mediation (the "Mediation") on May 13, 2020. SNIC did not consent to the Mediation and declined to attend.

32. On May 12, 2020, at 9:17 a.m., the day before the Mediation, Argenis's counsel emailed SNIC and demanded payment of its full $1 million limit to resolve its supposed claims

against AM Marlin and Waldy by 5:00 p.m. on May 13, 2020. That email provided no factual basis for any claim against AM Marlin or Waldy. SNIC declined the demand.

33. On May 13, 2020, Westminster, Chester, Argenis, Waldy, and Ms. Munoz attended the Mediation. On information and belief, Westminster devised a scheme to avoid paying the full limits of its own obvious liability for Argenis's injuries, and to profit off SNIC. Pursuant to Westminster's scheme, the parties to the Mediation purported to enter into settlements of their claims. But those settlements were shams.

34. In the first settlement (the "Chester Settlement"), Argenis and Ms. Munoz purported to release Chester in exchange for a payment supposedly valued at $30 million. Of that $30 million, however, only $5.4 million was actually paid in cash, by Westminster, under Chester's Westminster primary and excess policies. Argenis and Ms. Munoz—a paralyzed worker and his wife—thus received *$600,000 less* than the Westminster Policy's $6 million in limits.

35. The rest of the Chester Settlement consisted of Chester's alleged "assignment" of its right to sue SNIC, both under the SNIC Policy and under an extracontractual theory of statutory bad faith, to Argenis and Ms. Munoz. Westminster and Chester claimed to value this assignment at $24.6 million, but it was unfunded upon execution.

36. Westminster's unfunded promise to Argenis and Ms. Munoz was not worth $24.6 million; as Westminster well knew, it was worth nothing. As this Court and the Third Circuit held, SNIC had no duty to defend or indemnify Chester. No suit had been filed against Chester or AM Marlin. And the potential claims against Chester sought to hold it liable for its own

failure to maintain the fire escape—not for any act or omission of AM Marlin, which had been hired to fix a leak in an apartment unit's bathroom ceiling.

37. The Chester Settlement was an attempt to set up SNIC for extracontractual exposure and, thus, wrongfully extract an undeserved windfall from an insurer other than Westminster, the insurer for the at-fault party.

38. Westminster also engineered a second settlement (the "Waldy Settlement" and, collectively with the Chester Settlement, the "Sham Settlements"). Pursuant to the Waldy Settlement, Argenis and Ms. Munoz allegedly released their own, undefined claims against Waldy in exchange for an "assignment" of Waldy's unasserted rights under the SNIC Policy. The parties claimed to value this assignment at $5 million, but it was entirely unfunded upon execution.

39. It is difficult to conceive the basis for any allegation against Waldy for legal responsibility for the accident. Waldy was standing on the fire escape *with* Argenis when it collapsed and was himself injured. He was not involved in the maintenance of the fire escape. He was never sued, and he never requested a defense or indemnity from SNIC before the Mediation. His counsel first contacted SNIC on May 20, 2020, a week *after* the Sham Settlements were entered into.

40. Waldy's assignment to Argenis and Ms. Munoz was not worth $5 million; again, it was worth nothing. Westminster knew all of this. The Waldy Settlement was another step in Westminster's effort to pressure SNIC into a payment above its policy limits, and for which SNIC had no legitimate coverage obligation.

41. Separately, Waldy released his own claims against Chester and Altman in exchange for a confidential payment.

42. The Sham Settlements thus permitted Westminster to avoid fully compensating Argenis for the significant injuries he experienced due to the balcony collapse on Chester-owned property. Instead of paying the full limits it owed, Westminster promised Argenis and Ms. Munoz $29.6 million in eventual compensation *from SNIC*, not from Westminster. Westminster had no basis to make that promise.

**IV. Westminster Initiates the First Action.**

43. On information and belief, for Westminster's scheme to avoid its own liability and profit off SNIC to succeed, Westminster had to sue SNIC and force it into a settlement with Westminster, Argenis, and Ms. Munoz.

44. On May 8, 2020—the same day Westminster invited SNIC to the Mediation—Westminster initiated a lawsuit against SNIC in the U.S. District Court for the Eastern District of Pennsylvania. The action was captioned *Westminster American Insurance Company, et al. v. Security National Insurance Company*, No. 2:20-cv-02195 (E.D. Pa.) (the "First Action").

45. On May 21, 2020, SNIC issued a supplemental coverage letter to Westminster regarding Chester which identified the ELE as an additional ground precluding coverage under the SNIC Policy.

46. After the Mediation and the Sham Settlements, Westminster and its co-plaintiffs filed a first amended complaint on May 26, 2020, adding Argenis and Ms. Munoz as assignees of Chester and Waldy and broadening the litigation from three to eight claims against SNIC. Westminster and its co-plaintiffs filed a second amended complaint (the "SAC") on June 11, 2020.

47. The SAC described the action as "an insurance coverage, breach of contract, and bad faith action premised on [SNIC's] repeated breach of its duties to investigate, to defend and

indemnify its insureds and additional insured, and to settle the underlying claims at or within available policy limits."

48. The SAC alleged eight counts: three counts for declaratory judgment that SNIC had a duty to defend and indemnify Chester (Counts I and II) and Waldy (Count III); two counts of statutory bad faith under 42 Pa. C.S. § 8371 (Counts IV and V); one count of breach of the implied duty of good faith and fair dealing (Count VI); and two counts of breach of insurance contract (Counts VII and VIII).

49. The statutory bad faith claims were central to Westminster's scheme to parlay a $1 million policy limit (which did not even apply) into "compensatory, statutory, and punitive damages in an amount in excess of $142 million."

50. When Westminster initiated and procured the First Action, it knew—from, *inter alia*, the plain language of the SNIC Policy, SNIC's and Argenis's correspondence with Westminster, and Westminster's 150 years of experience as an insurer—that SNIC had no liability to Chester, Argenis, Waldy, or Ms. Munoz under the SNIC Policy relating to the fire-escape balcony collapse.

51. Westminster certainly knew that SNIC at least had a reasonable basis for denying coverage, which is fatal to a bad faith claim under Pennsylvania law. Westminster's demand of more than $142 million on those claims was frivolous.

52. Therefore, Westminster knew its claims were invalid under Pennsylvania law. Alternatively, if Westminster did not actually know its claims were invalid, it was grossly negligent in not knowing.

53. Westminster's primary purpose in initiating and procuring the First Action against SNIC was not to secure a fair adjudication of Argenis's and Ms. Munoz's claims.

Rather, Westminster sought to extract an unwarranted settlement from SNIC based on the *in terrorem* effect of more than $142 million in purported damages, high litigation costs, and significant negative publicity related to Argenis's and Waldy's tragic injuries.

54. On August 16, 2021, the U.S. District Court for the Eastern District of Pennsylvania granted SNIC's motion to dismiss and dismissed the First Action in its entirety. *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, 555 F. Supp. 3d 75 (E.D. Pa. 2021). The Court held that the ELE unambiguously barred coverage because Argenis was employed by Altman, an additional insured listed in the Additional Insured Endorsement. The Court accordingly dismissed the declaratory judgment and breach of insurance contract claims.

55. Because SNIC had no coverage obligation, the Court held that the bad faith and implied covenant claims "fail for the same reasons," and dismissed them as well.

## V. Defendants Continue Their Statutory Bad Faith Claims in the First Action.

56. After the Court dismissed the First Action, Westminster decided to appeal and continue the case. To do so, it hired new counsel: Defendant Debra Tedeschi Varner and her law firm, Defendant Varner & Van Volkenburg, PLLC.

57. On September 15, 2021, Ms. Varner, on behalf of Varner & Van Volkenburg, filed a Notice of Appearance in the First Action as counsel for all plaintiffs, including Westminster. Ms. Varner, joined by other Varner & Van Volkenburg attorneys, represented the plaintiffs on appeal. Ms. Varner personally argued the appeal before the Third Circuit on June 27, 2022.

58. Ms. Varner describes herself as having "nearly 30 years of experience as an effective and reliable insurance and business litigator, . . . and a deep understanding of insurance and commercial litigation." Varner & Van Volkenburg describes itself as "the go-to firm for insurance coverage and bad faith" and touts its attorneys' "decades of collective experience."

59. At all relevant times, Ms. Varner has been a member of the Bar of the Commonwealth of Pennsylvania and has been admitted to practice before the U.S. District Court for the Eastern District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit.

60. Defendants appealed the First Action's dismissal to the Third Circuit. On July 7, 2023, the Third Circuit vacated the District Court's order and remanded. *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, No. 21-2730, 2023 WL 4399217 (3d Cir. July 7, 2023). The Third Circuit concluded that the Additional Insured Endorsement was ambiguous, construed it against SNIC, and held that Altman was not an "additional insured" for purposes of the ELE. However, the Third Circuit expressly stated: "We agree that the District Court's contrary analysis has considerable merit." It also left open SNIC's alternative grounds for dismissal, including whether any "suit" had triggered a duty to defend given that no complaint had been filed.

61. The Court's first dismissal was vacated on appeal. But a federal judge's conclusion that SNIC's reading of the policy was correct—together with the appellate court's acknowledgment that this reading had "considerable merit"—shows that SNIC's coverage decision, at a minimum, had a reasonable basis.

62. After remand, Defendants—now including Ms. Varner and Varner & Van Volkenburg, in addition to Westminster—continued the First Action. They continued not just the declaratory judgment and breach of contract claims, but their statutory bad faith claims as well. For instance, after remand, Defendants wrote in supplemental briefing that "Count V of the Second Amended Complaint seeks recovery *against SNIC for its bad faith conduct* toward Waldy, whose claims were assigned to Argenis and Munoz."

63. When Defendants continued the First Action after the District Court's initial dismissal, they knew that SNIC had no liability to Chester, Argenis, Waldy, or Ms. Munoz under the SNIC Policy relating to the June 25, 2019 balcony collapse. Further, Defendants knew that the manufactured statutory bad faith claims were entirely baseless, and the demand of more than $142 million on those claims was frivolous.

64. Specifically, from their ample experience with insurance litigation, Defendants were aware that a claim of statutory bad faith under 42 Pa. C.S. § 8371 fails if the insurer had a reasonable basis for its actions. At the very latest, once this Court held that the ELE excluded coverage, SNIC necessarily had a reasonable basis to deny the claim as a matter of law. Therefore, Defendants knew their statutory bad faith claims were invalid under Pennsylvania law.

65. That did not change after the Third Circuit's vacatur. The fact remained that the Court had agreed with SNIC on the interpretation of the ELE, and the Third Circuit itself agreed that the District Court's analysis "has considerable merit." Therefore, SNIC had at least a reasonable basis for taking that position.

66. Alternatively, if Defendants did not actually know their statutory bad faith claims were invalid, they were grossly negligent in not knowing that SNIC had a reasonable basis for its coverage position.

67. Defendants' primary purpose in continuing the statutory bad faith claims in the First Action against SNIC was not to secure a fair adjudication of these claims. Rather, Defendants continued to seek to extract a settlement from SNIC based on the *in terrorem* effect of more than $142 million in purported damages, high litigation costs, and significant negative publicity related to Argenis's and Waldy's tragic injuries.

68. Further, Varner & Van Volkenburg and Ms. Varner knew that the continuation of the First Action was intended to harass SNIC and coerce it into an unwarranted settlement.

## VI. Defendants Lose the First Action, but SNIC Suffers Substantial Pecuniary and Reputational Harm in the Process.

69. On September 22, 2023, the Court again granted SNIC's motion to dismiss, dismissed the SAC, and closed the case, finding that any further amendment would be futile. *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, 693 F. Supp. 3d 498 (E.D. Pa. 2023). This time, it held:

a. SNIC did not have a duty to defend or indemnify Chester under the Additional Insured Endorsement because Argenis and Ms. Munoz's claims against Chester did not seek to hold Chester liable for AM Marlin's acts or omissions, which is what the Additional Insured Endorsement covers.

b. SNIC did not have a duty to defend or indemnify Waldy under the SNIC Policy because no "suit" relating to the June 25, 2019 accident was ever initiated against Waldy. The Mediation did not constitute a "suit" as that term is defined by the SNIC Policy, because SNIC did not consent to it, and SNIC had not waived its right to consent because Waldy never tendered any claim to SNIC before the Mediation.

c. Because SNIC had no duty to defend, all of the remaining claims—including the statutory bad faith claims—failed.

70. The Court's decision confirms that SNIC's coverage position was legally correct, and therefore eminently reasonable.

71. On December 5, 2024, the Third Circuit affirmed the District Court's dismissal of the First Action. *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, No. 23-2902, 2024 WL 4987242 (3d Cir. Dec. 5, 2024). The Third Circuit held that the Additional Insured

Endorsement required that Chester be held liable for AM Marlin's acts or omissions, and that no "suit" had ever triggered coverage for Waldy. Its mandate issued on December 27, 2024.

72. Though the First Action terminated in SNIC's favor, SNIC expended attorneys' fees and costs of approximately $1 million over four and a half years of litigation, including two appeals.

73. SNIC also experienced substantial reputational harm. In effect, by initiating, procuring, and continuing the litigation, Defendants publicly accused SNIC of bad faith conduct in refusing to compensate Argenis and Ms. Munoz—sympathetic plaintiffs who experienced a tragic accident—despite a purported obligation to do so. This accusation carried particular weight since Westminster was another insurer.

74. The First Action was reported on by, *inter alia*, at least six articles in *Law360*, a widely read generalist legal publication, as well as by industry-focused publications including *Insurance Journal* and *Claims Journal*.

**VII. Defendants Initiate the Second Action, but Voluntarily Dismiss It to Avoid a Motion for Sanctions.**

75. On information and belief, Defendants were not content to give up on their scheme to saddle SNIC with enormous liability despite their loss in the First Action.

76. On October 23, 2025, Westminster, Argenis, and Ms. Munoz (as assignees of Chester)—again represented by Ms. Varner and Varner & Van Volkenburg, with Ms. Varner signing the complaint—initiated *another* lawsuit against SNIC in the U.S. District Court for the Eastern District of Pennsylvania. The action was captioned *Westminster American Insurance Company, et al. v. Security National Insurance Company*, No. 2:25-cv-06047 (E.D. Pa.) (the "Second Action").

77. Defendants' new complaint was almost a carbon copy of the SAC filed in the First Action:

a. All of the parties to the Second Action were also parties to the First Action.

b. Both actions stemmed from the same underlying occurrence: the collapse of the fire-escape balcony on Chester's property, the resulting injuries to Argenis and Waldy, and Westminster's theory that SNIC was somehow liable.

c. The SAC in the First Action alleged that SNIC "took the unsupported position that Chester Ave. was not entitled to additional insured coverage under the AM Marlin Policy," "refused to reconsider its position, declined to engage in settlement negotiations, and failed to participate in a mediation," and ultimately "fail[ed] to defend and indemnify Chester Ave." The complaint in the Second Action alleged the same wrongful acts in exactly the same language as the First Action.

d. The complaint in the Second Action contained a subset of the causes of action in the First Action's SAC: the new complaint's Counts I and II matched the SAC's Counts I and II; the new complaint's Count III matched the SAC's Count VI; and the new complaint's Count VII matched the SAC's Count VII. As if to emphasize the identity of the two cases, Defendants did not renumber Count VII, and the new complaint repeatedly referred to itself as "this Second Amended Complaint."

e. The new complaint also demanded the same "compensatory, statutory, and punitive damages in an amount in excess of $142 million," sought a declaration that SNIC must pay the same $24.6 million balance of the Chester Settlement, and repeated

the SAC's erroneous citation to "23 [*sic*] U.S.C. § 1332(a)(1)" as the basis for diversity jurisdiction.

78. When Defendants initiated and procured the Second Action after the District Court's dismissal of the First Action and the Third Circuit's affirmance, they knew that SNIC had no liability to Chester, Argenis, or Ms. Munoz under the SNIC Policy relating to the June 25, 2019 fire-escape balcony collapse. This Court had already decided as much, the Third Circuit had affirmed, and Defendants did not seek further review. They also knew that the copied-and-pasted claims in the Second Action were obviously barred by *res judicata* and the statute of limitations, as well as for the reasons this Court dismissed the First Action.

79. Therefore, Defendants knew their claims were invalid under Pennsylvania law. Alternatively, if Defendants did not actually know their claims were invalid, they were grossly negligent in not knowing.

80. Once again, Defendants' primary purpose in initiating and procuring the Second Action against SNIC was not to secure a fair adjudication of these claims. Rather, Defendants *continued* to seek to extract a settlement from SNIC based on the *in terrorem* effect of more than $142 million in purported damages, high litigation costs, and significant negative publicity related to Argenis's and Waldy's tragic injuries.

81. Varner & Van Volkenburg and Ms. Varner knew that the initiation of the Second Action was intended to harass SNIC and coerce it into an unwarranted settlement.

82. SNIC moved to dismiss for failure to state a claim because the Second Action was plainly barred by *res judicata* and the statute of limitations. Defendants opposed the motion to dismiss, arguing that the Court did not fully resolve the First Action—despite dismissing it, finding amendment futile, closing the case, and being affirmed on appeal.

Defendants also argued that the statute of limitations was tolled by the federal supplemental-jurisdiction statute, despite having invoked diversity jurisdiction, not supplemental jurisdiction, in their complaints in both actions.

83. On December 15, 2025, SNIC's counsel sent a letter to Ms. Varner, informing her that SNIC would move for sanctions against her and Varner & Van Volkenburg under 28 U.S.C. § 1927 and Fed. R. Civ. P. 11. SNIC's counsel provided a draft sanctions motion, and stated that if Defendants did not voluntarily dismiss the Second Action with prejudice, SNIC would file the motion.

84. Rather than defend the Second Action on the merits, Defendants agreed to dismiss it with prejudice. On January 8, 2026, the Court dismissed the action with prejudice pursuant to the parties' stipulation.

85. The Second Action therefore terminated in SNIC's favor: Defendants abandoned their claims with prejudice, in the face of SNIC's pending motion to dismiss and threatened motion for sanctions; SNIC paid nothing; and SNIC gave no consideration to obtain the dismissal. SNIC nonetheless expended attorneys' fees and costs to draft motions to dismiss and for sanctions. SNIC also experienced additional reputational harm arising from Defendants' renewed public accusations of SNIC's wrongdoing.

## COUNT I

### Dragonetti Act, 42 Pa. C.S. § 8351—Wrongful Procurement and Initiation of Civil Proceedings (Against Westminster)

86. SNIC incorporates by reference the allegations set forth in paragraphs 1 through 85, as though set forth fully herein.

87. Westminster procured and initiated the First Action against SNIC by authorizing, directing, funding, and participating in the action as a named plaintiff, and by structuring the Sham Settlements that supplied the purported assigned claims.

88. Westminster acted in a grossly negligent manner or without probable cause, as defined in 42 Pa. C.S. § 8352, in procuring and initiating the First Action. Westminster did not reasonably believe its claims were valid under existing or developing law. Westminster knew that there was no legal or factual basis for its claims against SNIC.

89. Westminster acted primarily for a purpose other than securing the proper discovery, joinder of parties, or adjudication of the claims on which the proceedings were based. Instead, Westminster sought to shift its own insured's exposure to SNIC and to extract a settlement from SNIC by threatening a demand of more than $142 million, imposing litigation costs, and generating negative publicity.

90. The First Action was terminated in favor of SNIC. On September 22, 2023, this Court dismissed the SAC and closed the case, and on December 5, 2024, the Third Circuit affirmed. The mandate issued on December 27, 2024.

91. As a direct and proximate result of Westminster's conduct, SNIC has suffered harm recoverable under 42 Pa. C.S. § 8353, including harm to its reputation and the expense, including reasonable attorneys' fees, of defending the First Action.

92. Westminster's conduct was willful, wanton, and/or reckless, meriting an award of punitive damages.

## COUNT II

**Dragonetti Act, 42 Pa. C.S. § 8351—Wrongful Continuation of Civil Proceedings**
**(Against All Defendants)**

93. SNIC incorporates by reference the allegations set forth in paragraphs 1 through 92, as though set forth fully herein.

94. After the Court dismissed the First Action on August 16, 2021, Westminster took part in the continuation of its statutory bad faith claims in the First Action by pursuing them as a plaintiff through two appeals and on remand. Varner & Van Volkenburg and Ms. Varner took part in the continuation of those claims by litigating them as counsel for Westminster and its co-plaintiffs, including by briefing and arguing the appeal and filing supplemental briefing on remand.

95. Defendants acted in a grossly negligent manner or without probable cause, as defined in 42 Pa. C.S. § 8352, in continuing their statutory bad faith claims in the First Action. After the Court dismissed the First Action on August 16, 2021, Defendants could not reasonably believe that those statutory bad faith claims were valid, because a federal court had already held that SNIC's coverage position was correct, which established at minimum a reasonable basis for SNIC's denial. The Third Circuit's later statement that the District Court's analysis had "considerable merit" confirmed that Defendants lacked any reasonable basis to continue pursuing statutory bad faith damages against SNIC.

96. Defendants acted primarily for a purpose other than securing the proper discovery, joinder of parties, or adjudication of the claims on which the proceedings were based. Instead, Defendants sought to extract a settlement from SNIC by threatening statutory bad faith exposure exceeding $142 million, imposing litigation costs, and generating negative publicity.

97. As attorneys of record, Ms. Varner and Varner & Van Volkenburg did not believe in good faith that the continuation of the First Action was not intended to harass SNIC and coerce an unwarranted settlement.

98. The First Action was terminated in favor of SNIC. On September 22, 2023, this Court dismissed the SAC and closed the case, and on December 5, 2024, the Third Circuit affirmed. The mandate issued on December 27, 2024.

99. As a direct and proximate result of Defendants' conduct, SNIC has suffered harm recoverable under 42 Pa. C.S. § 8353, including harm to its reputation and the expense, including reasonable attorneys' fees, of defending the continued First Action.

100. Defendants' conduct was willful, wanton, and/or reckless, meriting an award of punitive damages.

## COUNT III

**Dragonetti Act, 42 Pa. C.S. § 8351—Wrongful Procurement and Initiation of Civil Proceedings (Against All Defendants)**

101. SNIC incorporates by reference the allegations set forth in paragraphs 1 through 100, as though set forth fully herein.

102. Westminster procured and initiated the Second Action by authorizing and participating in it as a named plaintiff. Varner & Van Volkenburg and Ms. Varner took part in the initiation of the Second Action by drafting, signing, and filing the complaint, and litigating the Second Action as counsel for Westminster and its co-plaintiffs.

103. Defendants acted in a grossly negligent manner or without probable cause, as defined in 42 Pa. C.S. § 8352, in procuring and initiating the Second Action. The same claims

had already been finally adjudicated against Defendants and affirmed on appeal, and no reasonable person could believe they were valid under existing or developing law.

104. Defendants acted primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim in which the proceedings are based. Instead, Defendants sought to extract a settlement from SNIC by threatening a demand of more than $142 million, litigation costs, and negative publicity.

105. As attorneys of record, Ms. Varner and Varner & Van Volkenburg did not believe in good faith that the initiation of the Second Action was not intended to harass SNIC and coerce an unwarranted settlement.

106. The Second Action was terminated in favor of SNIC. On January 8, 2026, the Court dismissed the Second Action with prejudice pursuant to the parties' stipulation. Defendants abandoned their claims in the face of SNIC's pending motion to dismiss and threatened motion for sanctions, and SNIC gave no consideration to obtain the dismissal.

107. As a direct and proximate result of Defendants' conduct, SNIC has suffered harm recoverable under 42 Pa. C.S. § 8353, including harm to its reputation and the expense, including reasonable attorneys' fees, of defending the Second Action.

108. Defendants' conduct was willful, wanton, and/or reckless, meriting an award of punitive damages.

## PRAYER FOR RELIEF

109. WHEREFORE, judgment should be entered in favor of SNIC and against Defendants, for one or more of the following forms of relief or some combination of them:

(a) Compensatory damages for the expenses, including reasonable attorneys' fees and costs, that SNIC reasonably incurred in defending against the First and Second Actions, 42 Pa. C.S. § 8353(3);

(b) Compensatory damages for the harm to SNIC's reputation caused by the First and Second Actions, 42 Pa. C.S. § 8353(2);

(c) Punitive damages for Defendants' wrongful procurement, initiation, and continuation of the First and Second Actions, 42 Pa. C.S. § 8353(6); and

(d) Any such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

110. SNIC demands a trial by jury for all issues so triable.

**WHITE AND WILLIAMS LLP**

Dated: November 18, 2026

*/s/ Thomas B. Fiddler*
Thomas B. Fiddler (PA 59123)
Morgan Birch (PA 319358)
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7081
Fax: (215) 789-7564
*fiddlert@whiteandwilliams.com*
*birchm@whiteandwilliams.com*

Jayme Jonat (*pro hac vice* forthcoming)
Nicholas H. Hallock (*pro hac vice* forthcoming)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
14th Floor
New York, NY 10017
(646) 837-5151
(646) 837-5150 (fax)
*jjonat@hsgllp.com*
*nhallock@hsgllp.com*

*Attorneys for Plaintiff Security National Insurance Company*